T. M. CASEY, Plaintiff and Respondent,

v.

S. W. CORWIN et al., Defendants,

and

S. W. Corwin and State of North Dakota, Defendants and Appellants.

No. 7425.

Supreme Court of North Dakota.

July 26, 1955.

E. T. Christianson, Atty. Gen., C. E. Brace, Asst. Atty. Gen., Vernon R. Pederson, Sp. Asst. Atty. Gen., for appellant.

John A. Zuger and Charles L. Foster, Bismarck, for respondent Casey.

Cox, Cox, Pearce & Engebretson, Bismarck, for respondent Corwin.

BURKE, Chief Justice.

Plaintiff brought this action to quiet title to lots 1 to 5 inclusive in Block 51 of Governor Pierce Addition to the City of Bismarck. The defendant Corwin and the defendant State of North Dakota filed separate answers. Each claimed an interest in the described lands. After a trial in the District Court of Burleigh County, the Court determined all issues raised in favor of the plaintiff and a judgment was thereupon entered adjudicating that the answering defendants had no right, title or interest in the property and quieting title thereto in the plaintiff. The answering defendants have taken separate appeals from the judgment and have demanded a trial de novo in this court.

The lots in question were acquired by Burleigh County in 1927. On July 30, 1932, Burleigh County deeded these lots, together with other lots, to the defendant, Corwin. On March 24, 1933, Corwin obtained a judgment quieting the title to said lots in him. Burleigh County was a defendant in this action to quiet title and the judgment decreed that the county had no right, title or interest in the described lots. On October 6, 1933, Burleigh County gave a quitclaim deed to these lots to E. M. Casey. Casey's deed was filed for record in the office of the Register of Deeds of Burleigh County on November 15, 1933, Corwin's deed and a certificated copy of his judgment quieting title were filed for record in the office of the Register of Deeds on December 14, 1933. In 1939, E. M. Casey deeded the lots to T. M. Casey, the plaintiff, in this action. The defendant, State of North Dakota, claimed title to a portion of the lots by prescription. This claim arose out of the fact that for more than twenty years prior to 1949, Highway 10, a State and Federal Highway traversed a portion of these lots.

We shall direct our attention first to the claim of the State. With respect to this claim, the evidence is undisputed that for at least 50 years prior to 1949 a highway of some sort crossed these lots, entering on the north side thereof and proceeding in a southeasterly direction to the east side of lot 1. It eventually became a part of the main highway to the east out of Bismarck, and in 1927, it was designated a Federal Highway. The testimony is unsatisfactory as to the width of the highway. The only evidence is that in recent years the traveled

portion was surfaced with "black top" and was 22 feet wide. There is no evidence as to the width of the shoulders beyond the surfaced portion of the highway or as to the width of the ditches, although there is some evidence that there were ditches. In 1949, Highway 10 was relocated. As relocated it does not cross the lots in question but runs parallel with and contiguous to their north boundary line. The old highway across these lots was then completely obliterated. The "black top" surfacing was removed, the ditches were filled and the ground was leveled so that no remaining trace of it could be seen. Upon this evidence the State claims title in fee by prescription to a strip of land 66 feet wide or 33 feet on each side of the center line of the old highway. In opposition to this claim, the other parties urge that the State had only an easement for highway purposes over the lots and in 1949 abandoned that easement.

■ There is no evidence whatever in the record that this highway was established by any means other than by prescription. Section 24-0701, NDRC 1943, provides:

"All public roads and highways within this state which have been or which shall be open and in use as such, during twenty successive years, hereby are declared to be public roads or highways and confirmed and established as such whether the same have been laid out, established, and opened lawfully or not."

While the state has the power under the provisions of Chapter 159, Laws of N.D. 1927, Sec. 24-0117, NDRC 1943, to acquire title in fee to rights of way for highways, the rule has long been established in this state that highways and streets dedicated by plats or section line reservations vest the public with no more than an easement for highway purposes. Donovan v. Allert, 11 N.D. 289, 91 N.W. 441, 58 L.R.A. 775; Northern Pac. Ry. Co. v. Lake, 10 N.D. 541, 88 N.W. 461; Gram Const. Co. v. Minneapolis, St. P. & S. S. M. Ry. Co., 36 N.D.

164, 161 N.W. 732; Otter Tail Power Co. v. Von Bank, 72 N.D. 479, 8 N.W.2d 599, 145 A.L.R. 1343; Rutten v. Wood, N.D., 57 N.W.2d 112, 113.

In Rutten v. Wood, supra, we quoted with approval from 25 Am.Jur. 426, as follows:

" 'In the absence of a statute expressly providing for the acquisition of the fee, or of a deed from the owner expressly conveying the fee, when a highway is established by dedication or prescription, or by the direct action of the public authorities, the public acquires merely an easement of passage, the fee title remaining in the landowner.' "

It is clear therefore that under the established law of this State, the interest acquired by the public across the lots involved in this litigation was only an easement of passage. All other interest in the property remained in the owner of the fee. Donovan v. Allert, 11 N.D. 289, 91 N.W. 441, 58 L.R.A. 775; Rutten v. Wood, N.D., 57 N.W.2d 112.

It is claimed by Casey and Corwin that the relocating of Highway 10 and the acts of the State Highway Department upon the old right of way of the highway across these lots constitute an abandonment of the old right of way.

By the provisions of Chapters 24-01 and 24-02, NDRC 1943, the State Highway Department is given exclusive control over the state highway system. Other highways in the state are under the control of the counties and municipalities. Chapters 24-07 and 40-39, NDRC 1943. The power to vacate highways, outside of the limits of incorporated cities and villages is vested in boards of county commissioners. Sec. 24-0704, NDRC 1943. In incorporated cities the power is vested in the governing board thereof. Sec. 40-3907, NDRC 1943.

■■ A consideration of the applicable statutes leads us to the conclusion that while the State Highway Department has the power to include highways within the state highway system and exclude others

from it, it has no power to vacate a highway which has been established and over which the public has acquired a right of passage. The only effect which the relocation of a highway by the State Highway Department can have therefore is to detach the old highway from the state highway system. The old highway remains as a public way within the control of the governing board of the territory in which it lies. Hillsdale Co. v. Zorn, 187 Okl. 38, 100 P.2d 436.

Here the acts which it is claimed constitute an abandonment of the old highway across the lots in litigation are the acts of the State Highway Department. The record discloses that these acts were performed under the mistaken belief that the state held fee title to the land over which the highway passed and that the land was available for use by the department for uses other than highway use. It was the intention of the department to use the land as a storage depot.

■ The part of the old highway in question is wholly located within the limits of the City of Bismarck. When it was detached from the state highway system, it reverted to the control of the governing body of the city. The acts of the Highway Department, made under a mistake of fact, in rendering the highway unsuitable for use as a highway were wholly beyond the power of the department and do not bind either the city or the public.

■ Furthermore, the claimed acquiescence by the public in the abandonment of the old highway cannot be construed to be more than a mere nonuser. The public had no free choice. Its exclusive use of the new routes provided was forced upon it by the acts of the Highway Department.

Section 24–0731, NDRC 1943, provides that nonuse, of a highway laid out by authority of the county commissioners, for a period of ten years shall vacate the highway. There is no like provision relating to public ways within a city. Since however the right of way was acquired by prescription we think Section 47–0512, subd. 4,

NDRC 1943, applies to this situation. That section provides:

"A servitude is extinguished:
* * *

"4. When the servitude was acquired by enjoyment, by disuse thereof by the owner of the servitude for the period prescribed for acquiring title by prescription."

Under the provisions of Section 24–0701, NDRC 1943, the period prescribed for establishing a highway by prescription is twenty years. Since the nonuse in this case had only continued for about four years prior to the commencement of this action we are satisfied that the easement of the public for a highway over these lots has not been extinguished.

There remains for consideration the controversy between the plaintiff Casey and the defendant Corwin. While Corwin's deed was executed first, Casey's was first of record and he claims that Corwin's deed is void against him under Section 47–1941, NDRC 1943, which provides:

"Every conveyance of real estate not recorded as provided in section 47–1907 shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof, * * *."

The defendant Corwin's first contention is that the judgment entered in the quiet title action, which decreed that Burleigh County had no interest in the land conveyed by the County to Corwin is binding upon the plaintiff as a privy of Burleigh County.

■ The plaintiff concedes that as a grantee of the County subsequent to the entry of the judgment against it, he is in privity with the County. He also concedes that, in the absence of a statute to the contrary, he would be bound by the judgment. Such concessions are in accord with the general rules. 50 C.J.S., Judgments, § 810, p. 357, 30 Am.Jur., Judgments, Sec. 226, p. 959; Hillsboro Nat. Bank v. Ackerman,

48 N.D. 1179, 189 N.W. 657; Gerwein v. McDonnell, 54 N.D. 509, 209 N.W. 986.

Plaintiff urges, however, that as to subsequent purchasers in good faith, this rule has been abrogated by the recording statute. Chapter 47–10, NDRC 1943. He says that Section 47–1941, supra, which provides that a prior unrecorded deed is void as against the recorded deed of a subsequent purchaser, in good faith and for value, settles the case. He urges that his good faith cannot be impugned by notice because the record shows he had no actual notice of the judgment and because constructive notice cannot be attributed to him, with respect to a judgment which has neither been docketed in the office of the clerk of court nor recorded in the office of the register of deeds. He points out that Section 47–1902, NDRC 1943, permits the recording of certified copies of judgments affecting the title to real estate and argues that such permission implies that such recording is necessary to give constructive notice of a judgment, unless it be a money judgment which has been docketed pursuant to Section 28–2013, NDRC 1943.

We are of the opinion that the position taken by the plaintiff cannot be sustained. Our statute permits judgments to be recorded but does not require their recording as the statutes of some states do. In the absence of a statute affirmatively and clearly requiring the recording of judgments, we do not think that any notice other than that which may be deemed to be given by the entry of a judgment is essential to bind a privy of the party against whom the judgment was entered.

In Freeman on Judgments, 5th ed., Section 439, it is said:

"* * * One who, by purchase or otherwise, has succeeded to an estate or interest, real or personal, is to that extent in privity with his predecessors in interest, and is therefore entitled to the benefits and subjected to the dis-advantages which by operation of final adjudication, had attached to the property in the hands of its former owners. *This rule is not dependent upon the docketing or recordation of the judgment and statutes governing lis pendens notice have no application to judgments rendered before the transfer.*" (Emphasis supplied.)

In Steinman v. Clinchfield Coal Corp., 121 Va. 611, 93 S.E. 684, 691, the Court stated:

"The court is of the opinion, however, that parties to judgments and decrees, and their privies, are, in the absence of statute requiring recordation bound by said judgments and decrees, without any other notice than that furnished by the proceeding itself."

This question was considered at length in Sheridan v. Andrews, 49 N.Y. 478, 481, wherein it was said:

"The docketing under the act of 1840 in the county clerk's office was not essential to the conclusiveness of the judgment. Such docketing is only required for the purpose of making a money judgment a lien upon the real estate of the debtor, and as a preliminary to the issuing of an execution. This judgment is not sought to be enforced as a lien, but is set up as an estoppel.

"The material point of inquiry is whether the defendants are persons claiming from or through Jackson, by title accruing after the commencement of the action against him. If they are, the judgment is conclusive upon them as to the plaintiff's title."

In this case it was also said:

"It never was pretended that any notice was necessary to render the judgment effectual as against parties claiming under the defendant by transfer

subsequent to the judgment. Campbell v. Hall, 16 N.Y. [575] 579, 580. The judgment disposes of the rights of the parties and is a matter of public record. Its effect cannot be impaired by a subsequent transfer by the defendant. He is concluded by it and his grantee cannot be in any better situation than the party from whom he obtained his right. Bacons Abr. Evidence, f. *The recording acts have no relation to the subject.*" (Emphasis supplied.) See also Smith v. Kessler, 22 Ida[ho] 589, 127 P. 172; Whitford v. Crooks, 54 Mich. 261, 20 N.W. 45; Eakin v. McCraith, 2 Wash.T. 112, 3 P. 838.

Since the judgment quieting title in the defendant, Corwin, was binding upon the plaintiff in so far as the property described in that judgment was concerned, title must be quieted in the defendant, Corwin, as to that property. However, both Corwin's deed from the county and his judgment quieting title specifically excluded from their operation the land upon which the old right of way of Highway 10 was located. Casey's deed on the other hand included all of the land in question including the right of way of Highway 10. He thus acquired fee title to the highway subject to the public's easement of passage.

The judgment of the district court is therefore reversed. The case is remanded to the district court with directions to enter a judgment quieting title in the defendant Corwin to the land described in his deed from Burleigh County and in the plaintiff Casey, to the land upon which the old right of way of Highway 10 was located subject to the easement for highway purposes.

GRIMSON, MORRIS and SATHRE, JJ., concur.

JOHNSON, J., did not participate.